1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## EASTERN DISTRICT OF CALIFORNIA

9
10

RUBEN GONZALEZ-ZERMENO,

Case No. 1:25-cv-00488-SKO

11

Plaintiff,

12

v.

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

13

FRANK BISIGNANO,
Commissioner of Social Security[1],

14
15

Defendant.

(Doc. 1)

16

_____/

17

## I.    INTRODUCTION

18

Plaintiff Ruben Gonzalez-Zermeno ("Plaintiff") seeks judicial review of a final decision of

19

the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications

20

for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social

21

Security Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs,

22

which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States

23

Magistrate Judge.[2]

24

## II.    FACTUAL BACKGROUND

25

On November 16, 2021, Plaintiff protectively filed claims for DIB and SSI payments,

26
27

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration.  *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07.  He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

28

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 9.)

1    alleging he became disabled on June 25, 2020, due to stroke, diabetes, and high blood pressure.

2    (Administrative Record ("AR") 22, 63, 64, 86, 87, 111, 112, 113, 137, 138, 139, 165, 270–84, 322.)

3        Plaintiff was born in 1968 and was 51 years old on the alleged disability onset date.  (AR 33,

4    63, 86, 111, 137.)  He has an eighth-grade education and previously worked as a forklift driver.  (AR

5    35, 323.)

6    **A.    Relevant Evidence of Record[3]**

7        Plaintiff suffered a stroke in June 2020.  (AR 494–528.)  In October 2020, Plaintiff was

8    assessed by an occupational therapist with "[d]ecreased independence with activities of daily living"

9    ("ADLs").  (AR 478–80.)  He was noted to be "supervised to modest independent in most basic

10   ADL skills."  (AR 479.)  Plaintiff also "appear[ed] to have a delay in processing" and "significant

11   impairment in spatial relation awareness, possibly some component of executive thinking is also

12   involved."  (AR 479.)

13       In February 2021, Plaintiff again was assessed with "[d]ecreased independence with

14   [ADLs]."  (AR 481.)  He reported that he is "attempting to return to doing prior home tasks but

15   cognitively . . . he is unable to keep the 'little things organized.'"  (AR 481.)  He "starts a task but is

16   unable to finish as he will forget where he is in the process," tasks take longer to complete, and he

17   is "slow to react [and] gets confused."  (AR 481–82.)  Plaintiff attempts "vacuuming and laundry

18   with family supervising and finishing as needed."  (AR 481.)  The occupational therapist observed

19   that Plaintiff "has a delay in his processing" and he "appear to have significant impairment in spatial

20   relation awareness."  (AR 482.)  Plaintiff was also noted to have "[d]ecreased independence with

21   [ADLs]" in March 2021.  (AR 421–22.)

22       Plaintiff presented to his occupational therapist in March 2022 for "therapy for deficits

23   limiting ADL independence."  (AR 783–85.)  According to him, all tasks "take at least 30% more

24   time to complete."  (AR 783.)  He reported he "still loses track of what he is doing and will stop task

25   and have to recall what task he was doing before he can restart."  (AR 784.)  The occupational

26   therapist observed that Plaintiff "presents with cognitive deficits including but not limited to

27

28   _____
     [3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the
     contested issues.

1  maintaining concentration, executive function, [and] delayed processing." (AR 784.)

2       One day later, Plaintiff underwent a complete psychiatric evaluation with Melody
3  Samuelson, Psy.D. (AR 537–41.) On examination, Plaintiff exhibited disorder of speech, depressed
4  affect, slow psychomotor activities, poor attention, and low intellectual functioning. (AR 539–40.)
5  Dr. Samuelson diagnosed Plaintiff with moderate neurocognitive disorder and depressive disorder,
6  not otherwise specified. (AR 540.) She opined that Plaintiff was extremely impaired in his ability
7  to: follow detailed and complex instructions due to brain damage from a stroke; interact with the
8  public, coworkers, and supervisors "due to poor verbal fluency from a stroke"; maintain
9  concentration and adaptation for a period of time "due to executive functioning deficits from brain
10  damage from a stroke"; react to stressors common in a workplace environment "due to a stroke";
11  maintain regular attendance in the workplace and perform work activities on a consistent basis "due
12  to slow activation and deficits [in] motor speed", and perform work activities without special
13  additional supervision "due to brain damage from a stroke with slow processing speed, memory
14  deficits, executive functioning deficits and depression." (AR 540–41.) Dr. Samuelson assessed
15  marked impairment in his ability to follow simple oral and written one or two-step instructions. (AR
16  541.) She concluded that Plaintiff "had the stroke two years ago and [] would not be appropriate for
17  any full time work setting." (AR 541.)

18       Plaintiff presented for physical therapy in April 2022. (AR 769–71.) He noted that he
19  provided for his ADLs "with more time allotted." (AR 769.) At speech therapy that same month,
20  Plaintiff reported that he "has difficulties processing verbal information when is a group
21  conversation and is unable to complete tasks quickly." (AR 767.) That same month, Plaintiff
22  presented for psychotherapy complaining of delayed processing, among other symptoms. (AR 739–
23  742.) It was noted that he is having difficulty or is impaired performing domestic tasks and is
24  dependent on others. (AR 740, 743.) On examination, Plaintiff exhibited "speech that is normal in
25  rate, volume, and articulation and is coherent and spontaneous, though he is sporadically slow to
26  process before responding and was stuck, knowing what he wanted to say, but unable to say the
27  word he was thinking on several occasions." (AR 740.)

28       In May 2022, Plaintiff reported difficulty concentrating to his psychotherapist. (AR 959–

62.)  It was noted that Plaintiff "needs assistance or cues for self care tasks" and "needs assistance with domestic tasks."  (AR 959.)  Plaintiff reported to his psychotherapist in June 2022 that he is frustrated that the "limitations created by the stroke prevent[] him from completing [] task[s] in the same way he was used to doing so."  (AR 971.)

Plaintiff completed his occupational therapy treatment in August 2022.  (AR 764–65.)  The occupational therapist noted that all basic ADLs take "10% versus 30% more time to complete" and "cognitive and perceptual deficits [are] "still present."  (AR 764.)  Plaintiff presented with "cognitive deficits including but not limited to maintaining concentration, executive function, [and] delayed processing."  (AR 765.)  He was assessed with a history of stroke "with residual deficits that affect ADL functional independence."  (AR 765.)

In October 2022, Plaintiff presented for a comprehensive internal medical evaluation.  (AR 707–11.)  He reported performing "light cooking including stovetop cooking and some cleaning," shopping, and his own ADLs.  (AR 708.)  The examiner noted that Plaintiff reported "some problems with memory and perhaps some word finding problems although those were not apparent."  (AR 711.)

Plaintiff presented for psychotherapy sessions in January and February 2023.  (AR 1054–57, 1061–64.)  His need for assistance with domestic tasks was noted.  (AR 1054, 1061.)  At a psychotherapy session in June 2023, it was observed that Plaintiff's "ability to do domestic tasks is impaired and assistance is needed" and his "[f]unctional ability at work would be impaired."  (AR 1123.) On examination, a "short attention span" was "evident."  (AR 1123.)  In July 2023, Plaintiff's "difficulty in concentrating," "difficulty at times with processing his thoughts," and "continued difficulty thinking" was noted.  (AR 1129, 1131.)  Plaintiff's psychotherapist noted in August 2023 that he "needs assistance with domestic tasks" and his "workability performance would be impaired."  (AR 1137.)

In September 2023, the psychotherapist documented that Plaintiff's "self care is reduced but [due] to stroke issues," his "ability to do domestic tasks is impaired and assistance is needed," and his "work performance would be impaired."  (AR 1143.)  Later that month, Plaintiff reported a "difficulty in concentrating" and worsened difficulty with thinking.  (AR 1146.)  On mental status

4

examination, "signs of cognitive difficulty" were found, and Plaintiff was noted to be "sometimes confused." (AR 1145–46.) In October 2023, Plaintiff reported "still having problems managing his ADLs." (AR 1147.)

**B.    Plaintiff's Statement**

Plaintiff's wife completed an Adult Function Report on his behalf in January 2022. (AR 339–46.) Plaintiff stated that his impairments affect, among other things, completing tasks, concentration, understanding, and following instructions. (AR 344.) He reported that he rarely prepares simple meals and has "lots of trouble" and is "very slow on preparing and getting ingredients together," resulting in him feeling frustrated and having to stop. (AR 341.) He does some cleaning and helps his wife do laundry, but it takes him longer to perform those tasks. (AR 341.) He can pay attention for up to five minutes at a time. (AR 344.)

**C.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on May 10, 2022, and again on reconsideration on January 6, 2023. (AR 22, 165–75.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 181–233.) At the hearing on December 7, 2023, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 49–57.) A Vocational Expert ("VE") also testified at the hearing. (AR 57–62.)

Plaintiff testified that he has memory problems. (AR 54.) He does not prepare his own meals and does not do his own laundry because he cannot remember how to sort clothes. (AR 52–53.) He testified that he washes dishes and vacuums, but it takes "too much time" and he performs activities more slowly since his stroke. (AR 53–54.) Plaintiff testified he sometimes loses concentration and focus when watching television. (AR 54.)

**D.    The ALJ's Decision**

In a decision dated April 10, 2024, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 22–35.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 24–35.) The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2024, and he had not engaged in substantial gainful activity since June 25, 2025, the alleged onset date (step one). (AR 24.) At step two, the ALJ found

1    Plaintiff's following impairments to be severe: cerebrovascular accident; depressive disorder; and

2    adjustment disorder.   (AR 25–26.)   Plaintiff did not have an impairment or combination of

3    impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404,

4    Subpart P, Appendix 1 ("the Listings") (step three).  (AR 26–27.)

5          The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the

6    assessment at steps four and five.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go

7    from step three to step four, we assess your residual functional capacity . . . . We use this residual

8    functional capacity assessment at both step four and step five when we evaluate your claim at these

9    steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR [§§] 404.1567(c) and 416.967(c)
> except lift or carry 50 pounds occasionally and 25 pounds frequently; stand and/or
> walk six hours out of an eight-hour workday; sit six hours out of an eight-hour
> workday; frequently climb ramps and stairs; never climb ladders or scaffolds; never
> work at unprotected heights or around fast-moving machinery; frequently reach,
> push, or pull with the non-dominant upper extremity; frequently handle and finger
> with the nondominant upper extremity; simple and routine tasks.

15    (AR 27–28.)   Although the ALJ recognized that Plaintiff's impairments "could reasonably be

16    expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not

17    entirely consistent with the medical evidence and other evidence in the record for the reasons

18    explained in this decision."  (AR 28.)

19          Based on this RFC assessment, the ALJ determined that Plaintiff could perform his past

20    relevant work as a general laborer (step 4).  (AR 33.)  The ALJ also made the alternative finding that

21    Plaintiff could perform a significant number of other jobs in the national economy (step five).  (AR

22    34.)  The ALJ concluded Plaintiff was not disabled from June 25, 2020, through the date of the

23    decision.  (AR 35.)

24

---

25    [4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work
      setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  TITLES
26    II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P
      (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an
27    individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's
      RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and
28    'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"
      *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1    Plaintiff sought review of this decision before the Appeals Council, which denied review on

2    February 20, 2025.  (AR 1–7.)  Therefore, the ALJ's decision became the final decision of the

3    Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

### III.    LEGAL STANDARD

#### A.    Applicable Law

6    An individual is considered "disabled" for purposes of disability benefits if they are unable

7    "to engage in any substantial gainful activity by reason of any medically determinable physical or

8    mental impairment which can be expected to result in death or which has lasted or can be expected

9    to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However,

10    "[a]n individual shall be determined to be under a disability only if [their] physical or mental

11    impairment or impairments are of such severity that [they are] not only unable to do [their] previous

12    work but cannot, considering [their] age, education, and work experience, engage in any other kind

13    of substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

14    "The Social Security Regulations set out a five-step sequential process for determining

15    whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*,

16    180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).  The Ninth Circuit has provided

17    the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

25    *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  "If a claimant is found to be 'disabled' or

26    'not disabled' at any step in the sequence, there is no need to consider subsequent steps."  *Tackett*,

27    180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

28    "The claimant carries the initial burden of proving a disability in steps one through four of

the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,' " and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 930 F.3d 1141, 1153–54 (9th Cir. 2020). "This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff asserts the ALJ erred in the consideration of the persuasiveness of consultative examiner Dr. Samuelson's opinion and failed to articulate clear and convincing reasons for rejecting her subjective-symptom testimony.  (Docs. 14, 17.)  The Commissioner contends that the ALJ properly considered Dr. Samuelson's opinion, and substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms.  (Doc. 16.)

Because the Court finds that further proceedings are required regarding the opinion of Dr. Samuelson, as explained below, the Court does not reach the other allegation of error.[5]

### A.    Legal Standard

Plaintiff's claims for DIB and SSI are governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1520c, 416.920c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.    20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions."  20 C.F.R. §§ 404.1520c(a)–(b); 416.920c(a)–(b).

---

[5] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citations omitted). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). *See also id*. §

416.920c(b)(3).  "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'"  *Id.*  Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. §§ 404.1520c, 416.920c.  *See* 20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Samuelson's opinion.

**B.    Analysis**

The ALJ determined that Dr. Samuelson's opinion was "unpersuasive" because

> it is overly restrictive and unsupported by an explanation for the extreme and marked assessments.  It is also inconsistent with the record as a whole.  Mental status examinations throughout the record were consistently unremarkable, revealing normal speech, intact language, intact associations, logical thinking, and fair insight and judgment (Exs. 13F; 17F; 25F).  [Plaintiff] reported he does light cooking and cleaning, shops, and performs his own [ADLs] (Ex. 15F/2).  He reported he has no problems getting along with family, friends, or neighbors, and gets along well with authority figures (Ex. 4E/5-6).  Lastly, [Plaintiff's] mental symptoms were well-controlled controlled with conservative treatment of medication management and psychotherapy (Exs. 13F; 17F; 19F).  This evidence suggests [Plaintiff] has no more than moderate limitation in overall mental functioning.  Furthermore, whether [Plaintiff] is "disabled" is a determination reserved to the Commissioner (20 CFR 404.1527(e) and 416.927(e); and SSR 96-5p).

(AR 32.)

The Court concludes that the ALJ's evaluation of Dr. Samuelson's opinion is deficient because the ALJ did not adequately discuss the supportability and consistency factors and failed to articulate an explanation that is supported by substantial evidence.[6]  *Woods*, 32 F.4th at 792 (holding that an ALJ can "reject an examining or treating doctor's opinion as unsupported or inconsistent" if the ALJ "provide[es] an explanation supported by substantial evidence").  Although "the new regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review."  *Shannon B. v. Comm'r, Soc. Sec. Admin.*, Case No. 6:21-cv-01144-

---

[6] The Court's consideration of Dr. Samuelson's opinion does not include her conclusion that Plaintiff "would not be appropriate for any full time work setting" (AR 541), which, as the ALJ notes (AR 32), is evidence on an issue reserved to the Commissioner and is therefore neither "valuable nor persuasive."  20 C.F.R. §§ 404.1520b(c)(3), 415.920b(c)(3)

1    HL, 2023 WL 371650, at *5 (D. Or. Jan. 24, 2023) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346

2    (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds

3    for an adjudicator's rejection" of certain evidence), and *Treichler v. Comm'r of Soc. Sec. Admin*.,

4    775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ

5    must provide some reasoning in order for us to meaningfully determine whether the ALJ's

6    conclusions were supported by substantial evidence.").)

7        With respect to the supportability factor, the ALJ summarily found that the opinion is

8    "unsupported by an explanation for the extreme and marked assessments."  (AR 32.)  But Dr.

9    Samuelson <u>did</u> explain her assessments, pointing to Plaintiff's stroke symptoms of "brain damage,"

10   "poor verbal fluency," "executive functioning deficits," "slow activation," "deficits in motor speed,"

11   "slow processing speed," and "memory deficits" as rationale for the opined limitations.  (AR 540–

12   41.)  The ALJ apparently overlooked these explanations.  The ALJ also apparently overlooked the

13   fact that Dr. Samuelson's assessments are substantiated by her examination of Plaintiff, including

14   her findings of disordered speech, depressed affect, slow psychomotor activities, poor attention, and

15   low intellectual functioning, resulting in diagnoses of moderate neurocognitive disorder and

16   depressive disorder, not otherwise specified.  (AR 539–40.)  By ignoring the explanations given by

17   Dr. Samuelson for her opinion, and by omitting any discussion as to as to whether her own

18   examination findings and diagnoses support the opined limitations, the Court concludes that the

19   ALJ's supportability analysis lacks substantial evidence.  *See McKinsey v. Comm'r of Soc. Sec.*, No.

20   1:24-CV-00113-HBK, 2025 WL 830078, at *4–5 (E.D. Cal. Mar. 17, 2025) (ALJ erred by "entirely

21   fail[ing] to consider the extent to which any objective evidence and explanations presented by Dr.

22   Stinson support her opinion as required when considering the supportability factor."); *Schmitzer v.*

23   *O'Malley*, No. 1:22-CV-1038 JLT BAM, 2024 WL 4345772, at *5 (E.D. Cal. Sept. 30, 2024)

24   (finding error in the supportability discussion where the ALJ "failed to explain to what extent Dr.

25   Pietruszka's own treatment records did not support his opinions."); *Katherine D. v. Comm'r, Soc.*

26   *Sec. Admin.,* No. 6:20-CV-1920-MO, 2024 WL 244625, at *6 (D. Or. Jan. 23, 2024) ("Regarding

27   'supportability,' the ALJ erred by failing to discuss the strength of the evidence underlying Dr.

28   Hallenburg's conclusions."); *see also Suzi Marie H. v. O'Malley*, No. 3:22-cv-01963-WQH-AHG,

2024 WL 965233, at *8 (S.D. Cal. Mar. 5, 2024) ("[M]erely noting that [an] opinion is 'unsupported by the objective evidence' without any citations to [] treatment notes is insufficient" consideration of the supportability factor.).

The ALJ's evaluation of the consistency factor is equally deficient. An ALJ may not cherry-pick evidence in evaluating a medical opinion. *Buethe v. Comm'r of Soc. Sec*., No. 2:20-cv-552-KJN, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021) (collecting cases); *Cruz v. Kijakazi*, No. 1:21-cv-01248-AWI-HBK, 2023 WL 1447855, at *5 (E.D. Cal. Feb. 1, 2023) ("Even under the new regulations, the ALJ may not 'cherry-pick' evidence in discounting a medical opinion."). *See also* 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record]."); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits). Here, the ALJ found that Dr. Samuelson's opinion is "inconsistent with the record as a whole," including "[m]ental status examinations throughout the record [that] were consistently unremarkable, revealing normal speech, intact language, intact associations, logical thinking, and fair insight and judgment" and Plaintiff's report that he "does light cooking and cleaning, shops, and performs his own [ADLs]." (AR 32 (citing AR 633–698, 708, 720–48, 950–1151).) In so doing, the ALJ isolated portions of the record that the ALJ concluded undermined Dr. Samuelson's opinion but improperly ignored the other portions that were consistent with those limitations. For example, the ALJ cites generally to hundreds of pages of the record (without specifying any record in particular) that purport to contain "unremarkable" normal mental status examinations of Plaintiff, but overlooks that within those pages—and elsewhere throughout the record—are treatment notes documenting findings and observations that are remarkably *ab*normal and that bolster Dr. Samuelson's opined limitations, including processing delays (AR 479, 482, 740, 765, 784, 1129, 1131); "significant impairment" in spatial relation awareness and executive thinking (AR 479, 482), cognitive deficits (AR 764, 765, 784, 1129, 1131, 1145–46), problems maintaining concentration (AR 765, 784, 1129, 1131), perceptual deficits (AR 764), short attention span (AR 1123), executive function deficits (AR 765, 784), impaired functional workplace ability (AR 1123, 1137, 1143), word finding problems (AR 740), and confusion (AR 481–82, 1145–46).

1    Regarding Plaintiff's reported ability in October 2022 to perform "light cooking and

2    cleaning," "shop[ping]," and "his own [ADLs]," the ALJ did not consider the full context of these

3    reported activities throughout the relevant time period.  Accompanying observations, statements,

4    and testimony that qualified this self-report went unmentioned.  This evidence shows that due to his

5    history of stroke, Plaintiff could perform these tasks prior to and after October 2022 only with

6    assistance, supervision, additional time, and/or to a limited extent.  (*See* AR 421–22, 478–81, 765,

7    1147 (noting Plaintiff's "decreased" or "deficits" with ADL independence in October 2020,

8    February 2021, March 2021, March 2022, August 2022, and September 2023); AR 479 (Plaintiff is

9    "supervised" in "most basic ADL skills" in October 2020); AR 481 (Plaintiff performs "vacuuming

10    and laundry with family supervising and finishing as needed" in February 2021); AR 959, 1054,

11    1061, 1123, 1137, 1143 (Plaintiff "needs assistance or cues for self care tasks" and "needs assistance

12    with domestic tasks" in May 2022, January 2023, February 2023, June 2023, July 2023, and

13    September 2023); AR 53–54, 341, 481–82, 764, 769, 783 (ADLs and chores such as cleaning, dishes,

14    vacuuming, and laundry take "more time to complete" or require "more time allotted" in February

15    2021, January 2022, March 2022, April 2022, and August 2022); AR 481–82, 784 (Plaintiff is

16    "unable to finish" tasks due to confusion and memory deficits in February 2021 and March 2022);

17    AR 52, 344 (Plaintiff "has lots of trouble" and "is very slow" preparing simple meals in January

18    2022 and December 2023).)  Even the October 2022 internal medicine evaluation on which the ALJ

19    relies to conclude Plaintiff's ADLs undermined Dr. Samuelson's opinion (AR 708) documents

20    Plaintiff's reported "problems with memory" (AR 711) and is thus ***consistent*** with that opinion.

21    The Court is aware of the general proposition that ALJs are to resolve ambiguities and

22    conflicts in the record.  *Ford*, 950 F.3d at 1154.  It is also mindful of the deference desired by the

23    agency in promulgating these revised regulations.  *See* REVISIONS TO RULES, 82 Fed. Reg. 5844-01

24    at *5860 ("[The new regulations are] essential for [the agency's] administration of a massive and

25    complex nationwide disability program where the need for efficiency is self-evident.").  However,

26    the text of the regulations explicitly requires an explanation of how the ALJ considered the

27    supportability and consistency of an opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

28    Harmonizing this requirement with Ninth Circuit law prohibiting cherry-picking and requiring a

detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinions, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons. *See Buethe*, 2021 WL 1966202, at *7 (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows [for] review.")). *See also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1994) (while the ALJ need not discuss all evidence presented to them, they must explain why "significant probative evidence has been rejected"). This the ALJ did not do, and therefore the Court declines to find substantial evidence supports the RFC. *See Garmany v. O'Malley*, No. 1:23-CV-00607-HBK, 2024 WL 3105824, at *6 (E.D. Cal. June 24, 2024) (errors in addressing medical opinion evidence "calls into question whether the assessed RFC . . . [is] supported by substantial evidence").

Moreover, while Defendant attempts to provide reasons why the ALJ could have found that the limitations opined by Dr. Samuelson were not supported by or consistent with the other physical findings in the record (*see* Doc. 16 at 12–13), this is the sort of post hoc rationale that is impermissible in the Social Security context. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); *Stout*, 454 F.3d at 1054 (a reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the ALJ); *see also Walker v. Comm'r of Soc. Sec.*, No. 2:22-CV-01871-EJY, 2024 WL 64784, at *4 n.4 (D. Nev. Jan. 4, 2024) ("In response to Plaintiff's motion, the Commissioner specifically addresses the supportability and consistency factors and provides citations to the record. Unfortunately, these are *ad hoc* rationales the Court cannot consider").

## C.    Harmless Error Analysis

The error of the ALJ's analysis of the persuasiveness of Dr. Samuelson's opinion is not harmless. Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056. Here, the VE testified that the addition to Plaintiff's RFC of a requirement of two 15-minute breaks per day or of a reminder to stay on task from a supervisor once per half hour would preclude all work. (AR 59–60.) The Court therefore cannot "confidently conclude" that

"no reasonable ALJ" considering Dr. Samuelson's opinion could have reached a different disability determination. *See Carter v. Comm'r of Soc. Sec.*, No. 2:24-CV-01177-DGE, 2025 WL 747429, at *10 (W.D. Wash. Mar. 10, 2025) ("These errors were not harmless, as they impacted the RFC formulated by the ALJ.  If Plaintiff's testimony and the opinions of Dr. Craig and Nurse Wong had been credited, the ALJ could not have concluded Plaintiff was able to work.") (internal citations omitted); *David C. v. Comm'r of Soc. Sec.*, No. 23-CV-0655-WQH-MMP, 2024 WL 3596856, at *12 (S.D. Cal. July 31, 2024) (error not harmless where the Court finds the ALJ erred by failing to address adequately the supportability factor when evaluating a medical opinion); *see also Suzi Marie H.*, 2024 WL 965233, at *14 (determination that medical opinions were unpersuasive without providing an explanation supported by substantial evidence was "not inconsequential since it could have impacted the final RFC.").

## D.    Remand for Further Proceedings

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Notably, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the Court finds, and Plaintiff agrees (*see* Doc. 14 at 25), that remand for additional proceedings is necessary because the persuasiveness of the discounted limitations opined by Dr. Samuelson must be analyzed further before a determination of disability may be made.[7]  *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Cesar C. v. Dudek*, No. 1:24-CV-03177-EFS, 2025 WL 1065959, at *10 (E.D. Wash. Apr. 9, 2025) (remanding for further proceedings where the ALJ "failed to address the supportability of [medical] opinions in any meaningful way"); *Arroyo v. Comm'r of Soc. Sec.,* No. 2:22-CV-00360-DMC, 2023 WL 3853485, at *8 (E.D. Cal. June 6, 2023) (remanding for further proceedings where the ALJ failed to explain how a physician's opinion was

---

[7] As to the ultimate outcome of Plaintiff's claim, the Court expresses no opinion as to the level of persuasiveness that should be ascribed to the limitations.  Nor does the Court express what Plaintiff's RFC ultimately should be.  These are for the ALJ to decide.  *Ford*, 950 F.3d at 1154.

inconsistent with other objective medical evidence); *Buethe*, 2021 WL 1966202, at *7 (Because the ALJ cherry-picked facts and ignored probative evidence, including medical opinion evidence, "the proper remedy is remand, where the ALJ may either (a) reaffirm [their] decision after a more thorough explanation of why these opinions were unsupported by and inconsistent with the relevant evidence, or (b) award benefits."); *cf. Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

## V.    CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Ruben Gonzalez-Zermeno against Defendant Frank Bisignano, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **December 1, 2025**                          */s/ Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE